# EXHIBIT "D"

**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALEJANDRO MORALES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HEALTHCARE REVENUE RECOVERY GROUP, LLC, et al.,**<br><br>**Defendants.** | **Civil Action No. 15-8401 (ES) (JAD)**<br><br>**ORDER** |

**SALAS, DISTRICT JUDGE**

It appearing that:

1. Before the Court is defendant Healthcare Revenue Recovery Group, LLC's ("Defendant's"), motion for summary judgment. (D.E. No. 114). Among other arguments, Defendant submits that the complaint of plaintiff Alejandro Morales ("Plaintiff") should be dismissed for lack of standing. (*See* D.E. No. 114-5 at 20–23; D.E. No. 121 at 15–18).[1] For the reasons discussed below, the Court agrees and will dismiss the Complaint.

2. Injury in fact is "[f]irst and foremost" of Article III "standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). And among other requirements, injury in fact requires a "a *concrete* injury even in the context of a statutory violation." *Id.* at 1549 (emphasis added). Although "the risk of real harm can[ ] satisfy the requirement of concreteness," that degree of risk must be "sufficient to meet the concreteness requirement." *See id.* at 1549–50. But the risk of harm "must actually exist" rather than being only "abstract." *Id.* at 1548. For instance, when

---

[1] All citations to page numbers are to those generated by this Court's CM/ECF system.

Case 2:15-cv-08401-ES-JAD Document 122 Filed 07/24/19 Page 2 of 5 PageID: 1659

a mere "procedural violation [of a statute] is not itself an injury in fact," and a complaint does not "otherwise allege[] a risk of harm that satisfies the requirement of concreteness," the plaintiff lacks standing. *See, e.g.*, *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 113 (3d Cir. 2019).

3. "[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In other words, "a plaintiff must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment." *Id.* (quoting Fed. R. Civ. P. 56(e)).

4. Here, Plaintiff's one-count Complaint alleges that Defendant sent letters to collect debts; on those letters, including one sent to Plaintiff (D.E. No. 1-1), a "barcode above the recipient's name and address was visible through the window of the envelope" (Compl. ¶ 23); and, as a result, "[a]nyone c[ould] easily scan the barcode and access Plaintiff's personal account number," which "has the potential to cause harm to the consumer" (*id.* ¶¶ 27–28). Consequently, Plaintiff asserts, Defendant's "use of . . . written communications in the form [described] violated sections 1692f and 1692f(8) of the FDCPA." (*Id.* ¶¶ 58–60; *see also id*. ¶ 41(B)).[2]

5. Discovery has revealed, however, that the aforementioned "personal account number" is merely an "internal reference number" ("IRN"). (*See* D.E. No. 114-2 at 26–33 ("Friedlander Dep.") 98:11–99:10).[3] Plaintiff concurs that "a scan of the barcode reveals [an]

[2] 15 U.S.C. § 1692f(8) provides that it "is a violation of this section" for a debt collector to use "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram . . . ."

[3] The IRN derivable from a scan of the barcode on the envelope sent to Plaintiff (*see* D.E. No. 1-1) is "[redacted]" and "is also identified as a 'CRS #' and 'Master #' in Defendant's collection software." (D.E. No. 119-2 at 2 ¶ 5 & 6 ¶ 29).

internal reference number" (*see, e.g.*, D.E. No. 119-2 at ¶ 5) and uncontroverted deposition testimony specifically distinguished an IRN from an "account number" (*see, e.g.*, Friedlander Dep. 167:25–168:15; *id.* 158:6–8 (recognizing that "the barcode doesn't even contain any portion of an account number"); *see also* D.E. No. 119 at 22–23).

6. The IRN derivable from a scan of the barcode on the envelope sent to Plaintiff (*see* D.E. No. 1-1) "might not be unique to [Plaintiff]" (*see* Friedlander Dep. 99:1–10 & 101:17–102:8) and could pertain to "ten to 20 to even 25" other people (*see id.* 109:17–110:23; *see also* D.E. No. 119 at 8 ¶ 4 (conceding that the IRN "is unique to the Plaintiff *or twenty-five alleged debtors*" (emphasis added)).[4] And two witnesses, including Plaintiff, testified that they are not aware of "any way" in which someone could use a scan of the barcode "to reveal [one's] financial position," "identify [one's] financial status," *or even simply "to determine that [a letter containing the IRN barcode] was from a debt collector*." (*See* D.E. No. 114-2 at 41–54 ("Plaintiff Dep.") 115:11–116:18 (emphasis added); Friedlander Dep. 168:9–12). The record is devoid of evidence to the contrary. For instance, when asked how his "rights and privacy were violated" by inclusion of the barcode, Plaintiff testified that it was "really just speculation in regard to how exactly it was done" (Plaintiff Dep. 116:13–18) and that he did not have "any personal knowledge about what may have been revealed about [him]" by the barcode (*id.* 43:21–44:6; *see also id.* 33:9–12).

7. Nonetheless, Plaintiff asserts that there are various ways in which an IRN, once derived by a barcode scan, "can be used." (*See, e.g.*, D.E. No. 119-2 ¶¶ 11–13, 23 & 26). For

---

[4] Although Plaintiff elsewhere asserts that the IRN derivable from the barcode on the envelope sent to Plaintiff is "unique to Plaintiff" (*see* D.E. No. 119-2 ¶ 28), the evidence Plaintiff cites in support of that proposition suggests merely that the IRN corresponds to Plaintiff. (*See* D.E. No. 119-4 (Kim Decl. Ex. B at HRRG 46 to HRRG 48)). But that fact is not contested; and it is fallacious to conclude that simply because the IRN corresponds to Plaintiff, it does not correspond to other people. *See, e.g.*, *Toussaint v. Good*, No. 05-0443, 2008 WL 2994768, at *2 n.1 (W.D. Pa. Aug. 4, 2008), *aff'd*, 335 F. App'x 158 (3d Cir. 2009) (discussing the fallacy of affirming the consequent). In other words, if [redacted] corresponds to Plaintiff (say, "P → [redacted]"), it does not follow that Plaintiff is the only person to whom [redacted] corresponds (say, "[redacted] → P").

Case 2:15-cv-08401-ES-JAD Document 122 Filed 07/24/19 Page 4 of 5 PageID: 1661

instance, a representative of Defendant could "bring up a specific consumer's account information" if prompted by a person with both an IRN *and* "identification information"—*i.e.*, a "date of birth or the last four digits of [a] Social Security number." (*See* Friedlander Dep. 117:14-118:25 & 118:16–17; *id.* ¶ 23). But such theoretically possible invasions of privacy were not pleaded in the Complaint, which asserted only that '"[a]nyone can easily scan the barcode and access Plaintiff's *personal account number*," which "has the potential to cause harm." (Compl. ¶¶ 27–28 (emphasis added)); *see generally, e.g., St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357–58 (3d Cir. 2018) (recognizing "that the exposure of a plaintiff's account number through a glassine window implicates a core concern animating the FDCPA").[5]

8. The Court, however, may consider only the theory of standing pleaded in the Complaint; "[a plaintiff] may not effectively amend [his] [c]omplaint by raising a new theory of standing in . . . response to a motion for summary judgment." *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286 n.57 (3d Cir. 2014). "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Id.* (internal quotation marks omitted).

9. And on the theory of standing pleaded in the Complaint, Plaintiff has not alleged a concrete injury. ***First***, as discussed above, discovery has not shown that Defendant exposed Plaintiff's *account number*, as the Complaint had alleged. (*See* Compl. ¶¶ 27–28; *see, e.g.*,

[5] The contrast between the theory of injury in fact pleaded in the Complaint and the theories developed on summary judgment is clear. For instance, under the "identification information" theory, an injury could arise when a third party: (i) scans the barcode; (ii) derives *the IRN*; (iii) obtains Plaintiff's "identification information;" (iv) learns that the IRN is internal *to Defendant*; (v) contacts Defendant and provides the IRN *and* identification information; and (vi) (finally) learns Plaintiff's account information. (*See, e.g.*, D.E. No. 119-2 ¶ 23; Friedlander Dep. 117:14–118:25 & 118:16–17). Given that the envelope did not identify Defendant's status as a debt collector—and did not provide "identification information," *i.e.*, Plaintiff's date of birth or Social Security Number—it is unclear how the risk of such an injury could be "sufficient to meet the concreteness requirement." *See Spokeo, 36 S. Ct. at* 1549 & 1550; *cf. Kamal*, 918 F.3d at 116 n.6 (ruling that there was no injury in fact because "as pleaded, a thief would still need to 'pick off . . . different bits of information from different sources'" in order to harm the plaintiff under the relevant statute). Regardless, such theories were not pleaded in the Complaint and, as the Court notes above, they cannot be used now to avoid dismissal. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286 n.57 (3d Cir. 2014).

Friedlander Dep. 98:11–99:10). And Plaintiff "may not effectively amend [the] [c]omplaint by raising a new theory of standing." *See Blunt*, 767 F.3d at 286 n.57. ***Second***, even if the inclusion of the barcode on the envelope itself violated the literal text of the FDCPA, *see* 15 U.S.C. § 1692f(8); (Compl. ¶¶ 58–60), that "procedural violation is not itself an injury in fact," *see Kamal*, 918 F.3d at 113, because it does not implicate the "core concern animating [that provision of] the FDCPA—the invasion of privacy," *see Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). As discussed above, two witnesses, including Plaintiff, testified that they are not aware of any way in which someone could use the barcode, or the IRN derivable from it, to "identify [a debtor's] financial status" *or even simply* "*to determine that [a letter containing the IRN barcode] was from a debt collector*." (*See* Plaintiff Dep. 115:11–19 & 116:13–18 (emphasis added); Friedlander Dep. 168:9–12)). ***Finally***, for the same reasons, Plaintiff has not pleaded "a material risk of harm." *See Kamal*, 918 F.3d at 116–17.

10. As in *Kamal*, the "alleged injury is not itself concrete and the alleged risk of [invasion of privacy or "harm to the consumer"] is too speculative to satisfy the requirement of concreteness." *See id*. at 119.

Accordingly, IT IS on this 23rd day of July 2019,

**ORDERED** that the Complaint is DISMISSED *without prejudice*; and it is further

**ORDERED** that the Clerk of Court CLOSE this case.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**