# EXHIBIT "E"

**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALEJANDRO MORALES,** *on behalf of himself and those similarly situated*, | |
| **Plaintiff,** | Civil Action No. 15-8401 (ES) (JAD) |
| v. | **ORDER** |
| **HEALTHCARE REVENUE RECOVERY GROUP, LLC,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Alejandro Morales's ("Plaintiff") motion for reconsideration of the Court's July 23, 2019 Order granting defendant Healthcare Revenue Recovery Group, LLC's ("Defendant") motion for summary judgment (D.E. No. 137). (D.E. No. 123). Plaintiff also requests leave to file an amended complaint. (D.E. No. 138 ("Pl.'s Mov. Br.") at 12). The Court has reviewed the relevant submissions and decides the motion on the papers. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). And it appearing that:

1. On July 23, 2019, the Court issued an Order granting Defendant's motion for summary judgment and dismissing Plaintiff's Complaint for lack of standing. (D.E. No. 137). Since the Court set forth the relevant facts in its prior Order, the Court assumes the parties' familiarity with the same.

2. "Whether brought pursuant to Federal Rule of Civil Procedure 59(e), or pursuant to Local Civil Rule 7.1(i), the scope of a motion for reconsideration is extremely limited, and such motions should only be granted sparingly." *Martinez v. Robinson*, No. 18-1493, 2019 WL

1

4918115, at *1 (D.N.J. Oct. 4, 2019) (citing *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011); *Delanoy v. Twp. of Ocean*, No. 13-1555, 2015 WL 2235103, at *2 (D.N.J. May 12, 2015)). As such, a motion for reconsideration is granted only when necessary "to correct manifest errors of law or fact or to present newly discovered evidence." *Bootay v. KBR, Inc.*, 437 F. App'x 140, 146–47 (3d Cir. 2011) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A reviewing court may grant a motion for reconsideration based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). That said, a motion for reconsideration is not to be misused to get a second chance on a concluded matter. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995). The scope is generally very limited, and a plaintiff cannot file a motion for reconsideration to relitigate an issue without meeting one of the three requirements. *Blystone*, 664 F.3d at 415; *Martinez*, 2019 WL 4918115, at *1 (noting that a motion for reconsideration "may not be used to relitigate old matters, raise new arguments, or present evidence or allegations that could have been raised prior to entry of the original order"); *Walsh v. Walsh*, No. 16-4242, 2017 WL 3671306, at *1 (D.N.J. Aug. 25, 2017) ("Nor is a motion for reconsideration an opportunity to ask the Court to rethink what it has already thought through."), *aff'd*, 763 F. App'x 243 (3d Cir. 2019).

3. Here, Plaintiff moves under the first prong only. (*See generally* Pl.'s Mov. Br.). Accordingly, the Court must determine whether there has been an intervening change in the controlling law. Plaintiff relies on the Third Circuit's decision in *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019), and contends that *DiNaples* constitutes an intervening change in the controlling law. (Pl.'s Mov. Br. at 5–12). Particularly, Plaintiff argues that *DiNaples* draws no meaningful distinction between a debtor's internal reference number ("IRN") and an account

2

number when it is displayed on the envelope of a collection letter. (*Id.*). Thus, Plaintiff argues that because the barcode at issue here revealed an INR associated with Plaintiff, *DiNaples* mandates a finding that Plaintiff has standing under the Fair Debt Collection Practices Act ("FDCPA"). (*Id.*).

4. Defendant counters that *DiNaples* only stands for the proposition that disclosure of an account number embedded in an unencrypted quick response ("QR") code is sufficient to confer standing under the FDCPA. (D.E. No. 139 at 6). And because the uncontroverted evidence in this case shows that the internal reference number does not disclose any portion of Plaintiff's account number, *DiNaples* does not apply. (*Id.* at 6–7).

5. The Court agrees with Defendant. A review of the precedent and facts underpinning *DiNaples* reveals that it does not represent an intervening change in the law and that it is factually distinguishable from the case at bar.

6. The Court begins with the precedent on which *DiNaples* rests: *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) and *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351 (3d Cir. 2018). In *Douglass*, the Third Circuit analyzed whether the FDCPA was violated when the debtor's account number with the debt collector was visible through the glassine window of the debt collection envelope. 765 F.3d at 302. The Third Circuit determined that it did violate the FDCPA, emphasizing that the account number is "a piece of information capable of identifying [the plaintiff] as a debtor," and "its disclosure has the potential to cause [the] harm to a consumer that the FDCPA was enacted to address." *Id.* at 306. That is, the account number by itself revealed that the addressee was a debtor and that the letter was a debt collection effort. Thus, in *Douglass* the Third Circuit focused on how the information disclosed interfered with the debtor's privacy, a core concern underlying Congress's purpose in passing the

3

Case 2:15-cv-08401-ER-JBC Document 189-7 Filed 12/19/22 Page 5 of 11 PageID: 2296
Case 2:15-cv-08401-ES-JAD Document 140 *SEALED* Filed 09/13/2011 Page 4 of 10
PageID: 1962

FDCPA. *See id*. at 303–04.

    7.    Then in *St. Pierre* the Third Circuit was faced with the question of whether a debtor had standing to sue when the debt collector sent him a letter in an envelope displaying his account number with the debt collector. 898 F.3d at 355. Relying on *Douglass*, the Third Circuit found that the debtor had standing because the exposure of the debtor's account number involves the invasion of privacy. *Id*. at 358. Accordingly, such a harm "is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts." *Id.* (citing *Douglass*, 765 F.3d at 303; *Spokeo*, 136 S. Ct. at 1549).

    8.    Finally, in *DiNaples* the Court addressed whether a debtor had standing to sue when the debt collector sent her a collection letter in an envelope that had a QR code printed on its face. 934 F.3d at 278. When scanned by a QR-code reader application on a smartphone, the QR code revealed the following sequence of characters: "LU4.###1813.3683994." Importantly, the parties did not dispute that the string "LU4.###1813" was the Plaintiff's unencrypted account number with the debt collector. *DiNaples v. MRS BPO, LLC*, 15-1435, 2017 WL 5593471, at *1 (W.D. Pa. Nov. 21, 2017), *aff'd*, 934 F.3d 275 (3d Cir. 2019). Relying on the reasoning in *Douglass* and *St. Pierre*, the Third Circuit determined that the "[d]isclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still 'implicates core privacy concerns.'" *DiNaples*, 934 F.3d at 280 (quoting *Douglass*, 765 F.3d at 304). Particularly, as *Douglass* emphasized, the *DiNaples* court noted that the account number revealed when the QR code was scanned is a piece of core "protected information" that is "susceptible to privacy intrusions." *Id.* Thus, in *DiNaples* the Third Circuit simply found that there is no material difference between disclosing the account number directly on the face of envelope and doing so via an easily scanned QR code. *Id.* at 282 ("If, as we held in *Douglass*, disclosure of a debtor's

4

Case 2:15-cv-08401-ER-JBC Document 189-7 Filed 12/19/22 Page 6 of 11 PageID: 1297
Case 2:15-cv-08401-ES-JAD Document 140 *SEALED* Filed 09/13/2011 Page 6 of 10
PageID: 1963

account number is an invasion of privacy, it follows that disclosure of a QR code embedded with that number is not benign.").

9. Accordingly, the plain reading of *DiNaples* shows that it does not represent an intervening change in the law of this Circuit, but rather, it merely represents an application of the teachings of *Douglass* and *St. Pierre*.

10. Moreover, a close examination of the facts in *DiNaples* reveals that it is simply distinguishable from the instant case. As previously noted, the *DiNaples* decision rests on the undisputed fact that the QR code at issue there unquestionably revealed a sequence *that included the debtor's account number* with the debt collector. *See DiNaples*, 2017 WL 5593471, at *1 ("It is further undisputed that, through the use of such a reader, Plaintiff's *unencrypted account number*—the number used by Defendant to identify Plaintiff for its own purposes—would be displayed.") (emphasis added). In fact, the parties' Rule 56 statements of undisputed material facts, filed with the underlying motion for summary judgment motions in that case, show that there was no dispute that, when scanned, the QR code revealed the *plaintiff's account number* with the debt collector. *DiNaples v. MRS BPO, LLC*, No. 15-1435, at D.E. No. 66-3 ¶¶ 4 & 5; D.E. No. 76-1 ¶¶ 4 & 5. As such, it is not surprising that the Third Circuit framed the question before it as: "whether DiNaples suffered a concrete injury when her debt collector sent her a letter in an envelope displaying a QR code that, when scanned, revealed *her account number* with the debt collection agency." *DiNaples*, 934 F.3d at 279 (emphasis added); *see also id.* at 278 n.1 (explaining that the parties "omitted the first three digits of [the plaintiff's] *account number* from their summary-judgment filings") (emphasis added); *id.* at 280 (observing that "[d]isclosure of the *debtor's account number* through a QR code, which anyone could easily scan and read, still implicates core privacy concerns") (emphasis added). Moreover, it is similarly unsurprising that

5

Case 2:15-cv-08401-ES-JAD Document 140 *SEALED* Filed 09/13/2011 Page 6 of 10
Case 2:15-cv-08401-ER-JBC Document 189-7 Filed 12/19/22 Page 7 of 11 PageID: 2298
PageID: 1964

the decision in *DiNaples*, like *Douglass* and *St. Pierre*, rests on the finding that a debtor's account number is "a core piece of information relating to the debtor's status as such," that if revealed to the public, "it could be used to expose her financial predicament." *DiNaples*, 934 F.3d at 279 (quoting *Douglass*, 765 F.3d at 303).

11. By contrast, the uncontroverted record here shows that the scanned barcode reveals an IRN that is distinct from Plaintiff's account number. (*See* D.E. No. 137 at 2–3; D.E. No. 114-2 at 26–33 (CM/ECF Pagination) & D.E. No. 119-4 (together, "Friedlander Dep.") at 98:11–99:10 & 167:25–168:15; *see also id.* at 168:16–23 (noting that the collection letter shows Plaintiff's account number only on the payment voucher part of the letter, which is not visible without opening the letter); D.E. No. 119-4 at 24 (CM/ECF Pagination) (collection letter at issue showing that the account number appears only on the payment voucher, and that the IRN and the account number are distinct); D.E. No. 119-5 (CR Software Platinum notes detailing the IRN and account number as distinct numbers)). And critically, nothing in this record indicates that the IRN at issue constitutes the kind of core protected information that an account number implicates. To the contrary, the uncontroverted evidence shows that, when scanned, the barcode does not reveal "any private information related to Mr. Morales" and "doesn't even contain any portion of an account number." (Friedlander Dep. at 168:3–15). In fact, as the Court previously held, Plaintiff does not point to anything in the record showing any way "in which someone could use a scan of the barcode 'to reveal [one's] financial position,' 'identify [one's] financial status,' *or even simply 'to determine that [a letter containing the IRN barcode] was from a debt collector.*'" (D.E. No. 137 at 3 (quoting D.E. No. 114-2 at 41–54 (CM/ECF Pagination) ("Pl.'s Dep.") at 115:11–116:18 and citing Friedlander Dep. at 168:9–12) (emphasis in original)). That is, Plaintiff has provided nothing to show that the IRN, by itself, reveals or could reveal any private or protected information

6

about Plaintiff or his alleged debt the same way an account number can. Rather, Plaintiff's opposition to the summary judgment motion only offered theories never pleaded in the Complaint and that, in any event, were far too speculative and devoid of any evidentiary support. (*See* D.E. No. 137 at 4 & n.5 (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286 n.57 (3d Cir. 2014); *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 116 n.6 (3d Cir. 2019)). As such, nothing in this record even suggests that the IRN implicates any of the core concerns on which the FDCPA rests. *See, e.g.*, *Estate of Caruso v. Fin. Recoveries*, No. 15-7936, 2017 WL 2704088, at *6 (D.N.J. June 22, 2017) ("By failing to introduce evidence to demonstrate that defendant's barcode and number contained some private information regarding the deceased debtor or his alleged debt on their face or when scanned by a barcode scanner, plaintiff has failed to establish it has standing to maintain its FDCPA claim under § 1692f(8)."); *Anenkova v. Van Ru Credit Corp.,* 201 F. Supp. 3d 631, 637 (E.D. Pa. 2016) ("Anenkova does not provide any realistic scenario, nor do we discern any, where the barcode could be used by a third party to learn any information about her or her financial condition.").[1]

12. Finally, unlike the account numbers in *Douglass*, *St. Pierre*, and *DiNaples*, the IRN here is not even necessarily unique to Plaintiff and may apply to as many as 25 other alleged debtors. (Friedlander Dep. at 99:1–10, 101:17–102:8 & 109:17–110:23).[2] As such, the IRN at

---

[1] Much of Plaintiff's argument stands on the assertion that *DiNaples* saw no difference between an account number and an internal reference number. For support, Plaintiff relies on the following sentence from the Third Circuit's opinion: "The string 'LU4.###1813' was the internal reference number associated with DiNaples's account at MRS." *DiNaples*, 934 F.3d at 278. But this sentence is the only time in the entire opinion that the Third Circuit referred to the characters revealed by the QR code as an "internal reference number." *See generally id.* And as outlined previously, the factual record in *DiNaples* clearly establishes that it dealt with the disclosure of the plaintiff's account number, a piece information that *Douglass* deemed to implicate a core privacy concern animating the FDCPA. Nothing in *DiNaples* indicates that an internal reference number that does not include the debtor's account number or other similar private information is "a core piece of information relating to the debtor's status as such." *See id.* at 279 (quoting *Douglass*, 898 F.3d at 358). And Plaintiff has provided nothing that would even remotely make such a showing.

[2] Plaintiff's motion maintains that whether the IRN is unique to Plaintiff is a contested fact since "Defendant described [the IRN] as a 'unique' entry field associated with the Plaintiff." (*See* D.E. No. 138 at 9 (citing Friedlander

7

issue in this case resembles the barcodes at issue in cases like *Estate of Caruso* and *Anenkova*, and accordingly, does not implicate any of the core privacy concerns of the FDCPA. Therefore, because *DiNaples* is not an intervening change in the law and is distinguishable from the facts of this case, Plaintiff's motion for reconsideration fails.

13. With that in mind, Plaintiff's request for leave to file an amended complaint must also be denied. While "leave [to amend] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

14. Here, Plaintiff's arguments as to why amendment should be granted are simply without merit. First, Friedlander's deposition, which revealed that the IRN does not disclose Plaintiff's account number or any private information (and thus, clearly discredits the theory asserted in the Complaint), occurred on January 20, 2017. (*See* Friedlander Dep.). That was about eleven months before Defendant moved for summary judgment for the first time (*see* D.E. No. 66), and about a year before the parties briefed the operative summary judgment motion (*see* D.E. No. 114). As such, contrary to Plaintiff's assertions (Pl.'s Mov. Br. at 13–14), he cannot plausibly show that he was not on notice that the theory asserted in the Complaint was deficient. Nor has

---

Dep. at 93:10–18)). But this is fallacious. First, Mr. Friedlander did not specifically describe the barcode or IRN derived from it as unique to Plaintiff, but rather stated that the "*the regarding field* on the re line which contains [the IRN]" was one of the pieces of information associated with Plaintiff that are included in the letter. (*See* Friedlander Dep. at 93:12–13 & 98:11–15). In fact, despite repeated questioning by Plaintiff's counsel, Mr. Friedlander consistently maintained throughout his disposition that while the IRN is one of the data elements associated with Plaintiff, it is not necessarily unique to Plaintiff. (*See, e.g.*, *id* at 94:2–18 ("Q. So going back to [the IRN] you stated that it was unique to the plaintiff, how is it utilized? . . . A. Well, I'm not sure that's unique to the plaintiff. It is one of the data elements associated with the specific consumer. Q. So [the IRN] is unique to Alejandro Morales. A. It is – no, I said I didn't think it was unique . . . . Q. So [the IRN] is specific to the plaintiff; is that correct? A. No."); *see also id.* at 98:11–25; 101:23–102:11 & 110:5–23). Second, as the Court previously noted, Plaintiff provides no evidence that the IRN is actually unique to Plaintiff; rather, Plaintiff's cited evidence "suggests merely that the IRN corresponds to Plaintiff." (D.E. No. 137 at 3 n.4). But "it is fallacious to conclude that simply because the IRN corresponds to Plaintiff, it does not correspond to other people." (*Id.*). In short, the record before this Court simply does not support Plaintiff's assertion.

8

Plaintiff offered any "cogent reason for the delay in seeking the amendment." *See Mullin v. Balicki*, 875 F.3d 140, 152–53 (3d Cir. 2017).

15. Second, and more importantly, aside from minor edits to the purported class definition and other cosmetic changes (*see, e.g.*, D.E. No. 123-2 at 29–38 (CM/ECF Pagination) ¶¶ 40 & 64), the proposed amendment only adds the following underlined text:

> 24. Being sent in a window envelope, the barcode containing the account number, which is otherwise referred by HRRG as the internal reference number, associated with the Debt was visible through the window of the envelope.
> 25. This account number is also called a CRS # and a Master # in Defendant's collection software.
> 26. This account number is not assigned by Defendant's mail vender.

(*Id.* ¶¶ 24–26).

16. However, the new allegations in paragraphs 24 and 25 are contrary to the established record and the Court's prior Order, which explained that the IRN is *distinct* from Plaintiff's account number. (*See* D.E. No. 137 at 2–3). As such, the proposed allegations in paragraphs 24 and 25 lack any good faith basis and are in fact, demonstrably false. Moreover, in light of the Court's analysis above finding that the IRN does not implicate any of the FDCPA's privacy concerns, amendment is futile since there are no facts that Plaintiff could truthfully incorporate that would alter the outcome. Therefore, Plaintiff's request for leave to amend is denied.

Accordingly, IT IS on this 13th day of March 2020,

**ORDERED** that Plaintiff's motion (D.E. No. 123) is DENIED; and it is further

**ORDERED** that this Order shall be filed temporarily under seal and will remain sealed until further Order from the Court; and it is further

**ORDERED** that within 20 days of this Order, the parties shall file a joint motion to seal

attaching the Order marked with proposed redactions, if any; if no redactions are necessary, the parties shall so inform the Court; <u>failure to comply with this directive will result in the Order becoming unsealed in its entirety</u>.

      **ORDERED** that the Clerk of Court TERMINATE docket entry number 123.

                                              *s/Esther Salas*
                                              **Esther Salas, U.S.D.J.**