# UNITED STATES COURT OF APPEALS

for the

# THIRD CIRCUIT

_____

Case No. 20-1827

_____

ALEJANDRO MORALES, on behalf
of themselves and others similarly situated

*Appellant*

-v.-

HEALTHCARE REVENUE RECOVERY GROUP, LLC,

*Appellee*

_____

ON APPEAL FROM ORDERS ENTERED FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IN CASE
NO. 2:15-cv-08401, ESTHER SALAS, U.S.D.J.

**BRIEF FOR PANEL AND *EN BANC* REHEARING ON BEHALF OF HEALTHCARE
REVENUE RECOVERY GROUP, LLC**

Sean X. Kelly, Esq.
Christian M. Scheuerman, Esq.
Attorneys for Appellee HRRG
Marks, O'Neill, O'Brien, Doherty &
Kelly, P.C.
535 Rt. 38 East, Suite 501
Cherry Hill, New Jersey 08002

{NJ230061.1}



# Table of Contents

Page

INTRODUCTION ........................................................................................................ 1

BASIS FOR RELIEF ................................................................................................... 1

STATEMENT REQUIRED BY 3D CIR. L.A.R. 35.1 ................................................ 2

LEGAL ARGUMENT ................................................................................................. 2

I.    The Panel's Finding That Plaintiff Has Article III Standing To Pursue The FDCPA Claim Conflicts With The Recent U.S. Supreme Court Decision In *Transunion LLC v. Ramirez* ............ 2

II.    The Panel Overlooked And/Or Misapprehended Facts Which Materially Affected The Outcome Of The Appeal ............................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Braitberg v. Charter Communications, Inc.,
 836 F. 3d 925 (8th Cir. 2016) ................................................................................ 3

Clapper v. Amnesty Int'l USA,
 568 U. S. 398 ......................................................................................................... 9

Lujan v Defenders of Widlife,
 504 U.S. 555 (1992) .............................................................................................. 7

TransUnion LLC v. Ramirez,
 No. 20-297, 2021 U.S. LEXIS 3401 (U.S. 2021) ......................................... *passim*

**Statutes**

15 U.S.C. 1692k(a)(2)(B) ........................................................................................ 5

**Rules**

3d Cir. L.A.R. 35.1 .................................................................................................. 2

Fed. R. App. P. 35(b)(1)(A) .................................................................................... 1

Fed. R. App. P. 40(a)(2) .................................................................................... 1, 10

## Introduction

"No concrete harm, no standing." Those are the unambiguous words of the United States Supreme Court decision in Transunion v Ramirez, decided on June 25 2021, after argument in the instant matter. The decision in this matter plainly conflicts with Ramirez requiring rehearing or *en banc* consideration. Pursuant to Ramirez, Plaintiff lacks Article III standing to pursue the Fair Debt Collection Practices Act (hereafter the "FDCPA") claim because he cannot establish a concrete injury or a material risk of future harm. In addition, HRRG submits that the panel below overlooked and/or misapprehended multiple undisputed facts which materially affected the outcome of the appeal. As a result, rehearing is respectfully requested in order to secure and maintain uniformity of the Court's decisions.

## Basis For Relief

HRRG petitions this Court for panel and *en banc* rehearing of the Court's July 6, 2021, opinion which found that Plaintiff possessed Article III standing to pursue his claim under FDCPA on the following grounds:

    A.    Pursuant to Fed. R. App. P. 35(b)(1)(A), the panel decision conflicts with the decision of the United States Supreme Court in TransUnion LLC v. Ramirez, No. 20-297, 2021 U.S. LEXIS 3401 (U.S. 2021), and rehearing and consideration by the full Court is necessary to secure and maintain uniformity of the Court's decisions.

    B.    Pursuant to Fed. R. App. P. 40(a)(2), it is believed that the panel overlooked and/or misapprehended critical facts which materially affected the

outcome of the appeal, including the undisputed benign nature of the barcode and the absence of any disclosure of private information.

### Statement Required By 3d Cir. L.A.R. 35.1

I express a belief, based on a reasoned and studied professional judgment, that the panel's decision is contrary to the decisions of the Supreme Court of the United States, and that consideration of the full Court is necessary to secure and maintain uniformity of decisions in this Court, i.e., the panel's decision is contrary to the decision of the Supreme Court in TransUnion LLC v. Ramirez, No. 20-297, 2021 U.S. LEXIS 3401 (U.S. 2021).

### LEGAL ARGUMENT

I. **The Panel's Finding That Plaintiff Has Article III Standing To Pursue The FDCPA Claim Conflicts With The Recent U.S. Supreme Court Decision In *Transunion LLC v. Ramirez***

HRRG respectfully submits that the Third Circuit panel's decision on the standing issue conflicts with the recent U.S. Supreme Court decision in TransUnion LLC v. Ramirez, No. 20-297, 2021 U.S. LEXIS 3401 (U.S. 2021), requiring reconsideration or rehearing *en banc*. The panel below essentially found standing based on potential disclosure of private information that has not occurred. Ramirez does not permit such a holding.

At issue in Ramirez was the question of Article III standing in a class action alleging a statutory violation of the Fair Credit Reporting Act. The Court reversed the Ninth Circuit in part, finding an absence of concrete harm to confer Article III standing. Based on Ramirez, the panel decision below must be reversed.

In Ramirez, 8,185 putative class members sued TransUnion under the Fair Credit Reporting Act. The plaintiffs alleged that TransUnion failed to use reasonable procedures to ensure the accuracy of their credit files. Ramirez, No. 20-297 at * 7-8. This resulted in the class members' credit reports incorrectly stating that they were on the "OFAC" watch list, which is a list of individuals who threaten the United States' national security. Individuals on the list include terrorists, drug dealers, and other serious criminals. Id. at * 11.

However, TransUnion only provided the credits reports of 1,853 class members to third-party businesses. The credit reports of the other 6,332 class members were not disseminated to anyone. Id. at * 8. The Court held that the 1,853 class members whose credit reports were disseminated to third-parties had Article III standing, while the 6,332 class members whose credit reports were not lacked standing because they had not established concrete harm. Id.

When addressing standing for the 6,332 class members, the Court reasoned that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." Id. at * 30. See also Braitberg v. Charter Communications, Inc., 836 F. 3d 925, 930 (8th Cir. 2016) (holding that the "retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts.").

{NJ230061.1}   3

The <u>Ramirez</u> Court next addressed and rejected plaintiff's contention that the inaccurate credit reports of the 6,332 class members presented a risk of *future* harm. Importantly, the Court first noted that "<u>Spokeo</u> did not hold that the mere risk of future harm, without more, suffices to demonstrate Article III standing in a suit for damages." <u>Ramirez</u>, No. 20-297 at * 33. The Court then pointed out that that there was no evidence that any of the 6,332 class members were harmed by the risk of dissemination of their credit reports to third-parties *which never materialized*. The Court explained that,

> Here, the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized—that is, that the inaccurate OFAC alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit. Nor did those plaintiffs present evidence that the class members were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses. Therefore, the 6,332 plaintiffs' argument for standing for their damages claims based on an asserted risk of future harm is unavailing.

<u>Id.</u> at * 33-34.

The Court further detailed how the class members had presented no evidence to establish that there was a "sufficient likelihood" that the credit information would be disclosed to a third-party in the future. The Court reasoned that,

> The plaintiffs claimed that TransUnion could have divulged their misleading credit information to a third party at any moment. But the plaintiffs did not demonstrate a sufficient likelihood that their individual credit information would be requested by third-party businesses and provided by TransUnion during the relevant time

> period. Nor did the plaintiffs demonstrate that there was a sufficient likelihood that TransUnion would otherwise intentionally or accidentally release their information to third parties.

Id. at * 34. As a result, the Court concluded that the 6,332 class members whose internal TransUnion credit files were not disseminated to third-party businesses did not suffer any concrete harm. Id. at * 37.

Like Ramirez, the evidence in the record in the present case establishes that Plaintiff suffered no concrete nor particularized harm as the result of merely receiving a letter with a benign barcode on the envelope. The Court in Ramirez, in reversing the Ninth Circuit in part, has reinforced the notion that federal lawsuits by unharmed individuals are not permissible where they are simply looking to enforce general compliance with regulations. That is precisely what Plaintiff is attempting to do in the case at hand.

First, it is important to understand factually that the symbol at issue is simply a barcode used to track retuned mail to identify outdated addresses. That is, on its face, the symbol has no meaning whatsoever. Importantly, the barcode is not used in any fashion related to the "private" information of Plaintiff. Instead, it is simply a symbol that is scanned by computers in the event that an envelope is returned by the postal service to sort out incorrect addresses.

The complaint does not even allege that Plaintiff was damaged in any way by receiving the letter. The complaint seeks only "statutory damages" under 15

U.S.C. 1692k(a)(2)(B) for the technical violation of having a "symbol" on the outside of the envelope addressed to Plaintiff. (See Complaint, Appx 47).

The uncontroverted evidence in the record proves that the characters in the barcode alone cannot be used in any manner by a third-party to obtain any information about Plaintiff or the debt. (See Friedlander Deposition Transcript, Appx 97, pg. 171:25-172:6).  In fact, a person cannot call HRRG and obtain any private information about Plaintiff or the debt, even if they were able to "scan" the barcode. (See Friedlander Deposition Transcript, Appx 98, pg. 178:1-3).

Plaintiff even testified at his deposition that he does not know what the characters that might be revealed by a scan of the barcode are used for.  (See Plaintiff Deposition Transcript, Appx 107, pg. 19:18-23).  He also testified that he knows of no way to use the characters to identify that he is a debtor or that the letter related to the collection of a debt. (See Plaintiff Deposition Transcript, Appx 119, pg. 115:20-116:2).  When Plaintiff was asked at his deposition how his privacy rights were violated by inclusion of the barcode, he conceded that it was, "really just speculation" as to what exactly it could be done with the characters in the barcode.  (See Summary Judgment Opinion, Appx. 13).

Plaintiff further admitted at his deposition that he is unable to articulate how his privacy rights could be violated even had a third-party scanned the barcode. (See Plaintiff Deposition Transcript, Appx 114, pg. 77:22-25).

In granting summary judgment, Judge Salas recognized that the barcode merely contains benign characters used by Defendant for the purpose of sorting returned mail. (See Summary Judgment Decision, Appx 12-13, par. 5-6). The District Court stressed in its summary judgment opinion that, "two witnesses, including Plaintiff, testified that they are not aware of 'any way' in which someone could use a scan of the barcode 'to reveal [one's] financial position,' 'identify [one's] financial status,' or even simply 'to determine that [a letter containing the IRN barcode] was from a debt collector.'" (See Summary Judgment Opinion, Appx. 13). Importantly, just as in Ramirez, the internal reference numbers were never actually disclosed to any third-party. As so aptly summarized by the District Court, the Plaintiff has conceded no actual concrete or particularized harm.

The Third Circuit panel respectfully ignored all of these facts and the threshold mandate that it is the Plaintiff that bears the burden, at each stage, to demonstrate standing. Lujan v Defenders of Widlife, 504 U.S. 555, 561 (1992).

In reversing the Ninth Circuit in part, the Court in Ramirez focused on the fact that the inaccurate information that plaintiffs pointed to for the FCRA violation was never disclosed to a third-party, hence it never caused the plaintiffs concrete harm. Similarly, the facially meaningless barcode at issue in this case was never obtained by a third-party. Even if it was, it contained no harmful information. In short, Plaintiff has failed prove any actual concrete harm.

The Third Circuit panel undertook an analysis and reached a holding that is soundly rejected by Ramirez.  Instead of holding Plaintiff to his burden of proof of establishing concrete and particularized harm based on the actual record, the panel essentially constructed a non-existent fact pattern of what *might have occurred* instead of what *did occur* in order to find standing.  Examples of the facts which never occurred, but were nonetheless relied upon by the panel below to find standing include:

- A hypothetical third-party somehow obtaining a copy of Plaintiff's letter;

- The hypothetical third-party somehow obtaining technology to scan the barcode;

- The hypothetical third-party then somehow obtaining from some other unidentified source additional pieces of private information related to the Plaintiff, including his personal email address or his date of birth;

- Then having accomplished all of the foregoing, that hypothetical third-party would for some reason call HRRG in an attempt to nefariously gain access to the Plaintiffs account, or navigate to HRRG's website and do the same thing.

If all of the forgoing were to transpire the panel reasoned that the hypothetical third-party *might* obtain some private information about the Plaintiff.  The letter in this case was mailed to Plaintiff on December 3, 2014 (Appx 49), and – not surprisingly - in the nearly <u>seven years</u> since Plaintiff received the letter none of the forgoing has actually occurred.  Such an approach is directly contrary to Ramirez.

Since the panel below relied on possible future events to construct standing, Plaintiff could at best try to take advantage of the ability to prove a *material risk of future harm* to establish Article III standing. However, that argument fails for at least two reasons. First, Ramirez confirmed that such a claim is limited to injunctive relief only, not statutory damages claims such as this. Ramirez, No. 20-297 at * 30. See Spokeo, 578 U. S. at 341-342 (citing Clapper v. Amnesty Int'l USA, 568 U. S. 398). Hence, there can be no Article III standing in the case.

Second, even in injunctive cases, the risk must be sufficiently eminent and substantial. Neither is the case here. The hypothetical facts set up by the court can at best be described as speculative, which is insufficient to establish standing. There is no evidence to establish a "sufficient likelihood" that this scenario would unfold. Essentially, despite basing its decision on a hypothetical set of facts about what might have happened, the panel failed to even engage in the necessary analysis of whether the Plaintiff could prove a risk of future harm under Clapper. Ramirez instructs that more than a mere possible risk of future harm is required to establish standing. As a result, there is simply no evidence that Plaintiff was or will be harmed by being exposed to the risk of future harm.

Likewise the decision of the panel conflicts with Ramirez in its holding pertaining to the mere technical statutory violations at issue here. In Ramirez, one of the claims arose out of allegations of incorrect formatting of a statutorily

required written notice. The Court rejected the argument that such a technical violation, without explicit harm, can satisfy Article III standing. The statutory "formatting" claim in the Ramirez is no different the technical violation in the case at hand where a meaningless "symbol" is on the envelope and Plaintiff relies on nothing more as a basis for a class action. The Court in Ramirez summarily dismissed the claim by pointing out that the formatting of the letters caused no harm to the plaintiffs. Accordingly, the Court rejected the idea of trying to base Article III standing for mere statutory damages based on technical violations with "no adverse effects." Ramirez, No. 20-297 at * 6. For these reasons, rehearing is respectfully requested.

## II. The Panel Overlooked And/Or Misapprehended Facts Which Materially Affected The Outcome Of The Appeal[1]

Perhaps the most critical fact overlooked by the panel is the undisputed record establishing that the barcode on its face, and even if somehow scanned, does not reveal any private information. By ignoring this fact, and holding to the contrary, the panel made the leap to finding Article III standing. It also then erroneously held that Plaintiff had no burden to prove a material risk of future harm. Most critically, the evidence in the record clearly distinguishes the internal

---

[1] Pursuant to Fed. R. App. P. 40(a)(2), a petition for rehearing, "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." According to the Third Circuit Practice Guide, petitions for rehearing are granted only in "exceptional" circumstances. Exceptional circumstances include instances in which the panel overlooked or misapprehended points of law or fact that "truly affect the outcome of the appeal."

reference number ("IRN") which was imbedded in the barcode from the Plaintiff's account number and that confirms that the barcode does not disclose any protected information. In analyzing this issue, Judge Salas detailed how,

> *[C]ritically, nothing in this record indicates that the IRN at issue constitutes the kind of core protected information that an account number implicates*. To the contrary, the uncontroverted evidence shows that, when scanned, the barcode does not reveal 'any private information related to Mr. Morales' and 'doesn't even contain any portion of an account number.' (Friedlander Dep. at 168:3–15). In fact, as the Court previously held, Plaintiff does not point to anything in the record showing any way 'in which someone could use a scan of the barcode 'to reveal [one's] financial position,' 'identify [one's] financial status,' or even simply 'to determine that [a letter containing the IRN barcode] was from a debt collector.' (D.E. No. 137 at 3 (quoting D.E. No. 114-2 at 41–54 (CM/ECF Pagination) ("Pl.'s Dep.") at 115:11–116:18 and citing Friedlander Dep. at 168:9–12) (emphasis in original)). That is, Plaintiff has provided nothing to show that the IRN, by itself, reveals *or could reveal* any private or protected information about Plaintiff or his alleged debt the same way an account number can. Rather, Plaintiff's opposition to the summary judgment motion only offered theories never pleaded in the Complaint and that, in any event, were far too speculative and devoid of any evidentiary support.

***

As such, nothing in this record even suggests that the IRN implicates any of the core concerns on which the FDCPA rests. See, e.g., Estate of Caruso v. Fin. Recoveries, No. 15-7936, 2017 WL 2704088, at *6 (D.N.J. June 22, 2017) ("By failing to introduce evidence to demonstrate that defendant's barcode and number contained some private information regarding the deceased debtor or his alleged debt on their face or when scanned by a barcode scanner, plaintiff has failed to establish it has standing to maintain its FDCPA claim under § 1692f(8)."); Anenkova v. Van Ru Credit Corp., 201 F. Supp. 3d 631, 637 (E.D. Pa. 2016) ("Anenkova does not provide any realistic scenario, nor do we discern any, where the barcode could be used by a



third party to learn any information about her or her financial condition.").

(See Reconsideration Opinion, Appx 21-22).

Judge Salas further described how the IRN did not contain any portion of the account number,

> Discovery has revealed . . . that the aforementioned 'personal account number' is merely an 'internal reference number' ('IRN'). (See D.E. No. 114-2 at 26–33 ("Friedlander Dep.") 98:11–99:10). Plaintiff concurs that 'a scan of the barcode reveals [an] internal reference number' (see, e.g., D.E. No. 119-2 at ¶ 5) and uncontroverted deposition testimony specifically distinguished an IRN from an 'account number' (see, e.g., Friedlander Dep. 167:25–168:15; id. 158:6–8 (recognizing that 'the barcode doesn't even contain any portion of an account number') . . . .

(See Summary Judgment Opinion, Appx. 12-13).

Judge Salas also distinguished the IRN from Plaintiff's account number because it was not unique to Plaintiff, like an account number would be. On this topic, Judge Salas cited the Defendant's deposition testimony in which Mr. Friedlander explained established why the IRN was not unique. (See Reconsideration Opinion, Appx 22-23, n. 2). In the end, the conclusion by the panel that private information was disclosed by the barcode is simply contrary to the record.

Even the hypothetical relied on by the panel related to the combining of the barcode with an email address is based on misconstrued deposition. On page four of the Third Circuit opinion, the Court states that, "[t]he District Court determined

{NJ230061.1}                                      12



EXHIBIT A    page 15 of 18

HRRG's disclosure did not reveal protected information because multiple debtors could share one IRN." Morales, 20-1827, at 4. The District Court's finding that the barcode did not disclose protected information, and that Plaintiff thus lacked standing, was based on more than simply determining that the IRN could be assigned to more than one debtor.

As noted above, Judge Salas found that Plaintiff had no evidence on how the characters in the barcode could potentially be used to learn personal information about him. (See Summary Judgment Opinion, Appx. 13). The District Court further explained that, "two witnesses, including Plaintiff, testified that they are not aware of 'any way' in which someone could use a scan of the barcode 'to reveal [one's] financial position,' 'identify [one's] financial status,' or even simply 'to determine that [a letter containing the IRN barcode] was from a debt collector.'" (See Summary Judgment Opinion, Appx. 13).

Citing to the record at Dist. Ct. Dkt. No. 135-4 at 16, the panel misconstrues the record when it hypothesizes that a person could potentially use the IRN together with information visible on the outside of the envelope and an email address to update some of the consumer's contact information on HRRG's website. Morales, No. 20-1827, at 5. In reality, in the cited deposition excerpt HRRG's corporate representative testified that, "I'm not sure," and stated that he, "would have to inquire further as to how clerical support has been instructed to handle

that." Dist. Ct. Dkt. No. 135-4 at 16; Appx 209.  In addition, neither the characters in the barcode or the outside of the envelope disclose Plaintiff's email address, so a person would have to use an external source, separate and apart from the letter, to try and obtain it.

The panel states on page five of the opinion that "the IRN enabled identification in at least three ways." Morales, No. 20-1827, at 5.  The statement is misleading because there is no evidence in the record that the barcode or IRN alone could be used to obtain any private information about the consumer or the debt.  Rather, additional information, which had to come from another hypothetical external source other than the collection letter, was required to access any private account information.  Dist. Ct. Dkt. No. 135-4 at 14; Appx 207.

In particular, HRRG's corporate representative testified that in addition to the IRN, a person would need to provide HRRG with either a date or birth or the last four digits of the consumer's social security number to access specific account information.  (See David Friedlander deposition transcript pg. 118:14-17; Appx 207).  Since this information was not contained in the barcode or on the envelope, or even in the letter for that matter, the IRN did not enable identification of anything.  Rather, in order to attempt to obtain any personal information a person would need to obtain the date or birth or social security number through some external, and likely illegal, source.

It is respectfully submitted that the above factual errors, particularly when combined with an analytical approach that is contrary to Ramirez, were vital and material to the outcome of the appeal. Accordingly, it is requested that the Court grant HRRG's petition for rehearing.

## CONCLUSION

For the above reasons, it is respectfully requested that the Court grant panel and *en banc* rehearing of this Court's July 6, 2021 decision.

>MARKS, O'NEILL, O'BRIEN,
>DOHERTY & KELLY, P.C.
>
>/s/ Sean X. Kelly
>Sean X. Kelly, Esq.
>/s/ Christian M. Scheuerman
>Christian M. Scheuerman, Esq.
>Attorneys for Defendant