# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRO MORALES, *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHCARE REVENUE RECOVERY GROUP, LLC, and JOHN DOES 1 to 10,<br><br>Defendants. | Case No. 2:15-cv-08401-EP-JBC |

## REPLY BRIEF
## ON BEHALF OF PLAINTIFF ALEJANDRO MORALES
## IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

### (ORAL ARGUMENT REQUESTED)

Yongmoon Kim, Esq.
Philip D. Stern, Esq.
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117

*Attorneys for Plaintiff Alejandro Morales*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

1. ARGUMENT ........................................................................................................... 4

    1.1    Plaintiff is Adequate Because He Has Standing Based on
           Defendant's Intentional Disclosure of Private Information. .................. 6

    1.2    Class Members' Standing Can Be Determined on a Classwide
           Basis. ....................................................................................................... 12

    1.3    The Class is Ascertainable But Plaintiff Has No Objection to
           Modifying the Class Definition to Be Consistent with How
           Defendant Names the Sequence Revealed By the Barcode It
           Intentionally Disclosed. ........................................................................ 12

2. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................6

*Clemens v. ExecuPharm Inc.*,
    48 F.4th 146 (3d Cir. 2022)............................................................... 8, 9, 10, 11

*In re Horizon Healthcare Services Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017)............................................................................10

*Morales v. Healthcare Revenue Recovery Grp.,
    LLC*, 859 F. App'x 625 (3d Cir. 2021) ......................... 4, 5, 7, 9, 10, 11, 12, 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)..............................................................................6

*TransUnion v. Ramirez*,
    141 S. Ct. 2190 (2021) .................................................................. 4, 8, 9, 10, 11

## OTHER AUTHORITIES

FED. R. CIV. P. 23(b)(3)............................................................................... 5, 12, 13

FED. R. CIV. P. 23(c)..............................................................................................13

iii

1. **ARGUMENT**

Defendant make three types of objection to class certification but none should be sustained.

First, Defendant raises Plaintiff's standing based on the same meritless arguments which Defendant made in support of its pending summary judgment motion. After *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), the Third Circuit decided that Plaintiff has standing. That decision is law of the case and is binding on this Court. Defendant's contention that the Third Circuit never considered *Ramirez* is specious because Defendant petitioned for rehearing claiming the Court of Appeals neglected to consider *Ramirez* and that petition was denied. Thus, despite Defendant's assertions, the Third Circuit concluded that "the IRN's uses reveal its disclosure was a concrete injury." *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021). Nevertheless, if Mr. Morales lacked standing, this Court would lack subject matter jurisdiction to consider any issue including class certification; instead, the Court's only action would be limited to dismissing the action for lack o jurisdiction.

Second, Defendant asserts there must be an individual inquiry into each Class member's standing. Again, this argument has been addressed by the Third Circuit in this case. In its Opposition to Plaintiff's Motion for Class Certification, Defendant argues, "The most prevalent and important issue given the nature of

Plaintiff's claim—both for him and for each individual putative class member—is whether they can prove Article III standing under the circumstances that give rise FDCPA claim." Def.'s Br. 11. However, the Third Circuit stated that "[t]he envelope's barcode disclosed Morales's protected information, which caused a concrete injury in fact under the FDCPA." *Id.* at 628. As the disclosure of the IRN in the envelope's barcode caused a concrete injury to Morales, so too did the disclosure of the Class members' IRNs cause concrete injuries in fact to each class member. Thus, there is no need for any individual inquiry as to Class members' standing. *See* FED. R. CIV. P. 23(b)(3).

Third, Defendant claims there is no ascertainable class because the proposed class definition refers to a barcode which reveals the debt's account number when, in fact, the barcode which the parties have been litigating over for years reveals what Defendant calls an Internal Reference Number or IRN.

Defendant's objections should be overruled.

Third, the parties and the Court know this case is about the sequence of characters revealed by scanning the barcode which is visible from the windowed envelope Defendant used to mail collection letters. The proposed class definition referred to that sequence as an account number. Defendant's opposition points out that "account number" is not accurate. To make the definition more precise,

Plaintiff proposes the following revision (deleting the strikethrough text and adding the underlined text):

> All consumers residing in the State of New Jersey, to whom, from December 2, 2014 to December 2, 2015, Defendant sent a collection letter; which letter (a) was seeking to collect a consumer debt on behalf of creditor EMER PHY ASSOC N JERSEY; and (b) was sent in a windowed envelope such that the barcode ~~containing the account number associated with the debt was~~ visible from outside the envelope <ins>represented a sequence of characters beginning with "UM" and ending with characters contained in the addressee's mailing address</ins>.

**1.1  Plaintiff is Adequate Because He Has Standing Based on Defendant's Intentional Disclosure of Private Information.**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The assessment of the class representative's adequacy "requires a determination of . . . whether the representatives' interests conflict with those of the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001). As stated by Defendant, "Rule 23(a)(3) requires a proposed class representative to prove by a preponderance of the evidence that his claims or defenses are typical of the claims and defenses of the class." Def.'s Br. 5.

The proposed Class representative, Mr. Morales, has no conflicting interests with the purported Class members; all were sent a collection letter by Defendant in

in an envelope that contained a glassine window which exposed a barcode containing Morales's and the Class members' IRN numbers. As stated by the Third Circuit in this case, "A smartphone could scan the envelope's barcode to reveal an 'Internal Reference Number' (IRN)—UM###2—and the first ten characters of Morales's street address." *Morales,* at 626.

The Third Circuit also stated, unequivocally, that exposure of the barcode caused Plaintiff "a concrete injury in fact under the FDCPA." *Id.* at 628. Hence, Defendant's argument that "Plaintiff has neither alleged nor proven that he incurred a concrete and particularized injury as a result of being sent a letter… ." (Def.'s Br. 9) is at odds with the Third Circuit's decision here.

Lastly, if this Court does, in fact, lack subject matter jurisdiction over Plaintiff and the Class members due to the same's alleged lack of Article III standing, then this Court does not have the necessary jurisdictional authority to adjudicate Plaintiff's Motion for Class Certification. As the Third Circuit has already determined that Plaintiff does, in fact, have Article III standing and Plaintiff's Motion for Class Certification is pending in this Court, the issue of standing in the instant matter has already been decided.

Defendant chose to contest the Third Circuit's decision on standing by petitioning for rehearing. Having lost, Defendant abandoned further review by failing to seek *certiorari* in the Supreme Court. Consequently, the Third Circuit

issued its mandate which is binding. This Court lacks the authority to decide matters inconsistent with the Third Circuit's mandate.

Recent Third Circuit decisions on standing which expressly consider *Ramirez* further serve to confirm that Plaintiff (and each Class member) has Article III standing.

In *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022), a former employee had provided her employer with sensitive personal and financial information and the employer agreed to take appropriate measures to protect the confidentiality of that information. The employer's data was hacked including the information provided by the employee.

Noting that an injury-in-fact for Article III standing must be "actual or imminent," *Clemens* first considered whether the employee's injury was imminent because, in the data breach context, "the disclosure of the data may cause future harm as opposed to currently felt harm." *Id.* at 152.

> Courts rely on a number of factors in determining whether an injury is imminent—meaning it poses a substantial risk of harm—versus hypothetical in the data breach context. These non-exhaustive factors can serve as useful guideposts, with no single factor being dispositive to our inquiry. Among them is whether the data breach was intentional.
>
> [* * *]

> Further, courts consider whether the information accessed through the data breach could subject a plaintiff to a risk of identity theft.

*Clemens*, at 153-54.

*Clemens* concluded that the employee's future injury was sufficiently imminent. Just as the employer was legally obligated to keep the employee's information confidential, the Third Circuit held that Defendant was legally obligated to not disclose information which would identify Plaintiff as someone who owes a debt. *Morales*, at 626 ("HRRG broke the law when it placed a barcode on the envelope"). While in *Clemens*, the hacker intentionally gained access to the employee's information, here Defendant intentionally disclosed the IRN it assigned to Plaintiff. Furthermore, as the Third Circuit held, Defendant's barcode "might disclose the debtor's financial predicament [because …] the IRN enabled identification in at least three ways." *Morales*, at 627.

Thus, under *Clemens*, the intentional nature of Defendant's disclosure and the risk the disclosure created of Plaintiff's financial predicament satisfy the requirement that Plaintiff's injury in fact is imminent.

Next, *Clemens* discussed concreteness. The Third Circuit—consistent with *Ramirez*—emphasized, "[t]he fact that an injury is intangible—that is, it does not represent a purely physical or monetary harm to the plaintiff—does not prevent it from nonetheless being concrete." *Id.* at 154. In contrast, Defendant's standing

arguments leave no room for an intangible injury ever being concrete; under Defendant's interpretation of *Ramirez*, an FDCPA plaintiff lacks standing unless there is a *tangible* harm—that is simply not the law.

In *Clemens*, as in *Morales*, the Third Circuit confirmed that courts look to common law analogues and "the disclosure of private information and intrusion upon seclusion, though intangible, have long given rise to tort claims." For the "unauthorized exposure of personally identifying information" (such as the data breach in *Clemens* or the disclosure of private information used to identify a consumer's financial circumstances in *Morales*), the "harm is closely related to that contemplated by privacy torts that are 'well-ensconced in the fabric of American law." *Clemens*, at 155 (quoting *In re Horizon Healthcare Services Inc. Data Breach Litig.*, 846 F.3d 625, 638–39 (3d Cir. 2017)).

*Clemens* went on to explain that where, as here, "the alleged injury-in-fact is 'imminent' rather than 'actual'—we must also consider the type of relief sought." *Id.* at 155. Thus, "where the plaintiff seeks only damages, something more is required. Specifically, that plaintiff can satisfy concreteness where 'the exposure to the risk of future harm itself causes a *separate* concrete harm.'" *Id.* (quoting *Ramirez*, at 2211). The Third Circuit then explained:

> The Supreme Court did not reach the question of what separate harms might qualify as concrete to support a substantial-risk theory of future harm in an action for damages, but it did indicate that "a

> plaintiff's knowledge that he or she is exposed to a risk of future ... harm could cause its own current emotional or psychological harm," which could be sufficiently analogous to the tort of intentional infliction of emotional distress. [*Ramirez*], at 2211 n.7.
>
> [* * *]
>
> [I]f the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress […], the plaintiff has alleged a concrete injury.

*Clemens*, at 155.

Here, Plaintiff expressed his concerns over the potential privacy invasions incident to Defendant's disclosure of the IRN. [ECF No. 184-12 (Dep. Transcript of Morales) at 14:10-13, 14:18-20, 30:25-31:2; 32:3-4; 32:13-18; 34:9-19; 45:7-13; 117:13-18.] As explained in *Morales*, in at least three different ways, Defendant's disclosure of the IRN allowed Plaintiff (and each Class member) to be identified as someone who owes a debt while Defendant was legally obligated (per the FDCPA) to keep that information confidential.

For these reasons, Defendant cannot continue to relitigate the same issues and the *Morales* decision is binding on the standing issue. Moreover, the Third Circuit's decision in *Clemens* provides further support for the conclusion that *Morales* was correctly decided.

**1.2    Class Members' Standing Can Be Determined on a Classwide Basis.**

Defendant asserts that, because "Plaintiff has failed to meet his burden to prove his own Article III standing" due to an alleged lack of a concrete injury, Defendant is entitled to individualized inquiries as to each Class members' standing. *See* Def.'s Br. 11-12. However, as stated in the previous section, the premise on which Defendant bases its arguments is objectively incorrect as the Third Circuit has already ruled on the issue in this case: "The envelope's barcode disclosed Morales's protected information, which caused a concrete injury in fact under the FDCPA. So we will reverse the District Court's order dismissing Morales's action for lack of standing . . . ." *Morales*, 859 F. App'x at 628. As the violations committed by Defendant against Plaintiff Morales are virtually indistinguishable from the violations committed by Defendant against the putative Class members, the questions of law and fact common to Plaintiff and the Class members predominate over questions affecting individual members of the Class. *See* FED. R. CIV. P. 23(b)(3).

**1.3    The Class is Ascertainable But Plaintiff Has No Objection to Modifying the Class Definition to Be Consistent with How Defendant Names the Sequence Revealed By the Barcode It Intentionally Disclosed.**

Defendant has argued that the putative Class members are not ascertainable due to the fact that the Plaintiff seeks to certify is based on exposure of account numbers, rather than internal reference numbers. Plaintiff concedes that the

barcodes improperly exposed by Defendant contain protected account information in the form of IRNs, rather than account numbers themselves. As such, Plaintiff has no objection to modifying the currently proposed class definition to more accurately describe the violations committed by Defendant. Since the instant action's initiation over seven years ago, Defendant has been acutely and conspicuously aware that their collection letters exposed Plaintiff's and the Class members' account information in the form of an IRN. Defendant will experience no undue prejudice as a result of a modification to the class definition in order to more accurately describe and tailor the purported class. The putative Class members have been ascertained through production of Defendant's records in the form of Platinum Software account notes.

## 2. CONCLUSION

For the foregoing reasons, Plaintiff Alejandro Morales respectfully requests the Court enter an Order (1) certifying this action as a class action under FED. R. CIV. P. 23(b)(3) pursuant to FED. R. CIV. P. 23(c)(1)(A); and (2) define the class and the class claims, appoint Plaintiff as class representative, and appoint class counsel pursuant to FED. R. CIV. P. 23(c)(1)(B).

Respectfully submitted,

KIM LAW FIRM LLC

Dated: December 16, 2022

*s/Philip D. Stern*
Philip D. Stern