<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRO MORALES, *on behalf of himself and those similarly situated*, | |
| Plaintiff, | No. 15cv8401 (EP) (JBC) |
| v. | **OPINION** |
| HEALTHCARE REVENUE RECOVERY GROUP, LLC, *et al.*, | |
| Defendants. | |

**PADIN**, **District Judge.**

Plaintiff Alejandro Morales, on behalf of a putative class, alleges that Defendant Healthcare Revenue Recovery Group, LLC violated the Fair Debt Collection Practices Act ("FDCPA")[1] by mailing debt collection letters to New Jersey residents between December 2, 2014 and December 2, 2015. The letters were in envelopes with clear windows displaying a barcode that, when scanned, revealed an embedded account number/"Internal Reference Number" ("IRN") containing private information. D.E. 1 ("Complaint," or "Compl.") ¶¶ 23-26.

Defendant now moves for summary judgment for the third time, arguing in substance that Plaintiff lacks Article III standing because he has not alleged any concrete injury in fact. D.E. 189 ("SJ Mot."). Plaintiff moves for class certification, D.E. 192 ("Class Mot."), which Defendant opposes using largely the same arguments made in support of its summary judgment motion. Because the Third Circuit has already ruled against Defendant's standing arguments, Defendant's

---

[1] 15 U.S.C. § 1692f(8).

summary judgment motion will be **DENIED** and Plaintiff's class certification motion will be **GRANTED**.[2]

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, and those similarly situated, were mailed debt collection letters in a window envelope through which a barcode was visible.  Def. Facts ¶¶ 1, 2.[3]  A smartphone could scan the envelope's barcode to reveal an "IRN—UM###2—and the first ten characters of [Plaintiff's] street address."  *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626 (3d Cir. 2021).  "The letter listed [Plaintiff's] account numbers with [Defendant] and [Plaintiff's] creditor—but all of that was hidden."  *Id.*

On January 30, 2018, Defendant first moved for summary judgment.  D.E. 80.  On July 19, 2018, the Court (Salas, J.) denied the motion without prejudice upon Plaintiff's representation that more discovery was needed.  D.E. 97.  Magistrate Judge Dickson addressed the parties' discovery disputes and directed Defendant to re-file its summary judgment motion.  D.E. 113.  On January 3, 2019, Defendant complied.  D.E. 114.

On July 24, 2019, the Court granted Defendant's second summary judgment motion.  D.E. 122 ("SJ Op.").  As relevant here, the Court held that Plaintiff could not meet Article III's standing requirements because the Complaint did not allege any concrete injury.  *Id.*  The Court also determined that the barcode did not reveal protected information.  *Id.*

After the Third Circuit decided *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019), which held that debt collectors violate the FDCPA when they send consumers envelopes showing quick reference ("QR") codes, Plaintiff moved on August 21, 2019, for the Court to reconsider its

---

[2] The Court decides the motions without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).
[3] Defendant's Statement of Material Fact Not in Dispute.  D.E. 189-1.

decision. D.E. 123 ("Recon. Mot."). The Court denied the motion on March 13, 2020. D.E. 140 ("Recon. Op."). As relevant here, the Court determined that the *DiNaples* disclosure and this disclosure were different. *Id.*

Plaintiff appealed. D.E. 142. While that appeal was pending, on June 25, 2021, the Supreme Court issued *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a seminal decision concerning Article III standing, and specifically concrete injury.

On July 6, 2021, the Third Circuit reversed this Court's decision granting Defendant's summary judgment motion, and found that Plaintiff had established Article III standing. *Morales*, 859 F. App'x 625. On July 20, 2021, Defendant petitioned the Third Circuit for a rehearing in light of *Transunion*. D.E. 190-4 at 1 (Ex. A). The Third Circuit denied the petition. D.E. 190-5 (Ex. B).

After remand, the matter was reassigned to a different magistrate judge on November 20, 2021 and likewise later reassigned to the undersigned on July 14, 2022. D.E. 168. After more discovery, Defendant filed this motion for summary judgment, its third. D.E. 189 ("SJ Mot."). Plaintiff opposes. D.E. 190 ("SJ Opp'n"). Defendant has replied. D.E. 191 ("SJ Reply").

Plaintiff cross-moved for class certification. D.E. 192 ("Class Mot."). Defendant opposes. D.E. 193 ("Class Opp'n"). Plaintiff has replied. D.E. 194 ("Class Reply").

## II.   DISCUSSION

### A.   Defendant's Summary Judgment Motion

#### *1.   Legal standard*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the basis for its motion and demonstrating that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party adequately supports its motion, then the burden shifts to the nonmoving party to "go beyond the pleadings" and designate specific facts on the record that demonstrate a genuine dispute for trial exists. *Id.* (internal quotation marks omitted). However, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But even if material facts remain disputed, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

2. *Plaintiff has established Article III standing*

The crux of Defendant's argument is that Plaintiff lacks Article III standing under *Transunion* because Plaintiff failed to allege a concrete injury. This argument fails for numerous reasons.

First and most glaringly, the Third Circuit already rejected that argument. The Third Circuit relied substantially on *DiNaples*, in which the envelope's QR code contained the "internal

4

reference number associated with DiNaples's account." *Id.* (citing *DiNaples*, 934 F.3d at 278). Therefore, "[t]he injury was concrete—and 'closely related to' common law privacy torts—because the QR code made protected information 'accessible to the public.'" *Morales*, 859 F. App'x at 627 (quoting *DiNaples*, 934 F.3d at 280).

The Third Circuit found that "others may potentially share Morales's [Number]." *Morales*, 859 F. App'x at 627. Moreover, the record revealed IRN's disclosure to be a concrete harm because it was "a piece of information capable of identifying [Morales] as a debtor." *Id.* (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014)). The IRN was key to processing undeliverable mail, and therefore the barcode could be scanned by workers processing returned envelopes. *Morales*, 859 F. App'x at 627. And the IRN could enable public access to the account; a phone call to Defendant with the IRN and a second piece of information, like a birthdate, permitted account access. *Id.* And third, Defendant's website allowed anyone with the IRN and information visible on the envelope, together with an email address, to update some of the debtor's contact information. *Id.*

Second, Defendant's Facts misstate that the Supreme Court issued *Transunion* after *Morales*—and therefore, that the Third Circuit did not consider *Transunion*. *See* Def. Facts ¶ 26 ("Thereafter, . . . ."). But *Transunion*'s June 25, 2021 issuance predated *Morales*'s July 6, 2021 issuance by two weeks. Defendant also does not mention its petition to the Third Circuit to reconsider *Morales*, which quoted and relied extensively upon *Transunion* and argued explicitly that *Morales* "conflicts with" *Transunion*. D.E. 190-4. The Third Circuit, despite multiple opportunities, declined to agree with Defendant that *Transunion* defeated Plaintiff's claim. This Court cannot, and will not, second guess the Third Circuit's decisions.

5

But even if this Court were empowered to do so and independently analyzed *Transunion*'s impact on this matter, the outcome would be the same. *Transunion* held that courts analyzing whether harm is "concrete," for Article III purposes, should look to "history and tradition" as "a meaningful guide to the types of cases that Article III empowers federal courts to consider." 141 S. Ct. at 2204. "[C]ourts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016)).

"The most obvious are traditional tangible harms, such as physical harms and monetary harms," but "[v]arious intangible harms can also be concrete." *TransUnion*, 141 S. Ct. at 2204. "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (collecting cases).[4]

The Supreme Court applied these principles to 8,815 class members' claims. The class members alleged that a debt collector violated the Fair Credit Reporting Act by including incorrect information in the class members' credit files. Specifically, the files identified class members as having been designated by the U.S. Treasury Department's Office of Foreign Assets Control as "specially designated nationals" who threaten America's national security and with whom it is generally unlawful to transact business. *Id.* at 2021.

The Court found that some class members whose incorrect reports were disseminated to third-party businesses had "adequately alleged a harm associated with the tort of defamation, . . . a concrete harm that qualifies as an injury in fact." *Id.* at 2209. Conversely, the Court found that remaining class members had not alleged a concrete harm because they alleged only that their

---

[4] Notably, the Third Circuit cited *Spokeo*, invoked in *Transunion*, when discussing that "[i]ntangible harms like privacy abuses can be concrete." 859 F. App'x at 627 (citing *Spokeo*, 136 S. Ct. at 1549).

6

credit files, which had not been provided to any creditors, were inaccurate. *Id.* "[A]bsent dissemination," there was no concrete injury. *Id.*

Like the former and unlike the latter group of *Transunion* class members, there is a concrete harm here: dissemination of private information. Like *DiNaples*'s QR code "might disclose the debtor's financial predicament, so too could [Plaintiff's] barcode." *Morales*, 859 F. App'x at 627. The IRN, in other words, was a number only assigned to debtors that "enabled identification in at least three ways," making the IRN a piece of information capable of identifying [Morales] as a debtor." *Id.*

To the extent that Defendant, in reply, cites subsequent, post-*Transunion* Third Circuit case law, it can be distinguished. In *Clemens v. ExecuPharm Inc.*, the Third Circuit held that "in the data breach context, where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms," such as emotional distress or "spend[ing] money on mitigation measures like credit monitoring services." 48 F.4th 146, 155-56 (3d Cir. 2022).

But here, publication already occurred when each envelope bearing private information was mailed. *See Pierre v. Midland Credit Mgmt.*, 36 F.4th 728, 733 (7th Cir. 2022). And that disclosure "implicates a core concern animating the FDCPA — the invasion of privacy." *Douglass*, 765 F.3d at 303. "Disclosed to the public," an individual's status as a debtor "could expose [the individual's] financial predicament." *Id.*; *see also TransUnion*, 141 S. Ct. at 2211 (quoting *Spokeo*, 578 U. S. at 341) ("Like the torts of libel and slander, 'publication is generally presumed to cause a harm, albeit not a readily quantifiable harm,' but 'the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure.'"); *St.*

7

*Pierre v. Retrieval-Masters Retrieval-Masters, Inc.*, No. 15-2596, 2017 U.S. Dist. LEXIS 42875, at *19 (D.N.J. Mar. 24, 2017) ("[B]ecause the FDCPA unambiguously grants Plaintiff a statutory right to be free from the disclosure of private information that could expose . . . alleged debtor [status], and that the right to privacy is an interest that has long been recognized at law," plaintiff alleged a concrete injury).

Accordingly, the Court will deny Defendant's summary judgment motion and will turn to Plaintiff's motion for class certification.

B.  **Plaintiff's Class Certification Motion**

*1.  Rule 23(a) standard*

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence [its] compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015). Specifically, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4).

A plaintiff "must affirmatively demonstrate" that Rule 23's requirements are satisfied by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). This analysis will "frequently

8

entail overlap with the merits of the plaintiff's underlying claim because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (cleaned up). However, the Court may consider the merits "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

       2.      *Plaintiff's Proposed Class*

Plaintiff initially sought to certify the following class (the "Proposed Class"):

> All consumers residing in the State of New Jersey, to whom, from December 2, 2014 to December 2, 2015, Defendant sent a collection letter; which letter (a) was seeking to collect a consumer debt on behalf of creditor EMER PHY ASSOC N JERSEY; and (b) was sent in a windowed envelope such that the barcode containing the account number associated with the debt was visible from outside the envelope.

Class Mot. at 13.

In his Reply, Plaintiff amends the definition to the following:

> All consumers residing in the State of New Jersey, to whom, from December 2, 2014 to December 2, 2015, Defendant sent a collection letter; which letter (a) was seeking to collect a consumer debt on behalf of creditor EMER PHY ASSOC N JERSEY; and (b) was sent in a windowed envelope such that the barcode ~~containing the account number associated with the debt~~ was visible from outside the envelope <u>represented a sequence of characters beginning with "UM" and ending with characters contained in the addressee's mailing address</u>.

Class Reply at 6.

The Court utilizes the latter for its analysis.

       3.      *Plaintiff satisfies the numerosity requirement*

"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). But numerosity is not based purely on numbers; rather, factors to consider include the "size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis." *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993).

Here, Plaintiffs have demonstrated that there are 6,187 consumers with New Jersey addresses who received the letters at issue between December 2, 2014 and December 2, 2015. Kim Decl. ¶ 27.[5]

       4.      *Plaintiff satisfies the commonality requirement*

Where an action is to proceed under Rule 23(b)(3), Rule 23(a)'s commonality requirement "is subsumed by the predominance requirement." *Amchem*, 83 F.3d at 627 (3d Cir. 1996). However, for the sake of completeness, the Court analyzes this requirement and finds that Plaintiff has satisfied it.

"[T]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 264 (3d Cir. 2009) (internal citations omitted). Additionally, the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

---

[5] Declaration of Plaintiff's counsel Yongmoon Kim. D.E. 192-2.

of the claims in one stroke." *Dukes*, 564 U.S. at 350. The commonality requirement is not "a high bar." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004).

Here, Plaintiff and the proposed class share common facts: mailing in New Jersey of a debt collection letter in an envelope with a glassine window revealing a barcode that makes the IRN accessible. They share a common question of law: whether the mailings violated the plain language of FDCPA § 1692f(8). Because at least one shared common question of law or fact exist between Plaintiff and the proposed class, the commonality requirement is satisfied. *See Nyby v. Convergent Outsourcing Inc.*, 2017 U.S. Dist. LEXIS 122056 (D.N.J. Aug. 3, 2017) (certifying a class consisting of persons from whom defendant sought to collect a time-barred debt).

5.  *Plaintiff satisfies the typicality requirement*

Typicality requires a plaintiff to "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984). "The commonality and typicality requirements . . . tend to merge. Both serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. Similarly, there is a "low threshold" for satisfying commonality and typicality. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

For the same reason that Plaintiff satisfies the commonality requirement, so too does Plaintiff satisfy the typicality requirement.

11

> 6.  *Plaintiff and Plaintiff's counsel satisfy the adequacy requirement*

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g)." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 132 n.36 (3d Cir. 2012). However, "'[r]ealistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative.'" *In re Comty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 622 F.3d 275, 292 (3d Cir. 2010) (quoting *Pelt v. Utah*, 539 F.3d 1271, 1288 (10th Cir. 2008)).

With respect to Plaintiff's adequacy, the focus is on whether Plaintiff's interests conflict with the class. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up).

Plaintiff denies any conflicts of interest and has been an active participant throughout all phases of this litigation (Kim Decl. ¶¶ 28-33; Morales Decl. ¶¶ 10, 14)). Plaintiff's interests and the class's interests appear identical: seeking FDCPA statutory damages. Accordingly, the Court finds that Plaintiff is an adequate class representative.

As to the adequacy of counsel, Rule 23(g)(1) lists four factors for consideration: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will

commit to representing the class. *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *Sheinberg*, 606 F.3d at 132-133.

Plaintiff's counsel's declarations evidence extensive work investigating and identifying and pursuing potential claims, experience handling similar class actions, knowledge of the FDCPA, and expenditure of resources. Kim Decl. ¶¶34-47; Stern Decl. ¶ 3[6]; *see also Pro v. Hertz Equip. Rental Corp.*, No. 06-CV-3830, 2008 U.S. Dist. LEXIS 100181, at *20 (D.N.J. Dec. 11, 2008) (prior expenditure of significant resources evidences willingness to continue to do so). Accordingly, the Court appoints Plaintiff's counsel's firm as counsel for the class.

   7.   *Rule 23(b)(3) Standard*

Here, Plaintiffs seek certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to class members predominate over any questions affecting only individual members . . . [and] a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Third Circuit has also recognized an implicit ascertainability requirement." *Byrd*, 784 F.3d at 163. A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (cleaned up).

   8.   *Plaintiff satisfies the predominance and superiority requirements*

Under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

---

[6] Declaration of Plaintiff's counsel Philip D. Stern. D.E. 192-3.

13

representation." *Amchem*, 521 U.S. at 623. To assess predominance, courts "must examine each element of a legal claim through the prism of Rule 23(b)(3)." *Marcus*, 687 F.3d at 600 (cleaned up). "A plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)).

Here, there is no indication of any individualized facts. Rather, as discussed above in analyzing commonality, the claims are essentially identical. Accordingly, Plaintiff has demonstrated predominance.

A plaintiff must also demonstrate superiority, *i.e.,* "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," which requires comparing a representative action to multiple individual claims. Fed R. Civ. P. 23(b)(3); *Marcus*, 687 F.3d at 600. The superiority requirement requires courts to balance a class action's merits against alternative adjudication methods using four non-exclusive factors: (1) individual class members' interest in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action. *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Here, a class action is clearly the superior adjudication method. Plaintiff and each class member received the same collections letter from the same company regarding the same creditor in the same windowed envelope displaying a barcode. The class claim may be based on evidence common to all class members. *See Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 U.S. Dist. LEXIS 129587, at *5 (D.N.J. Sept. 10, 2013) ("[T]he Court finds that there are common questions of law or fact shared among the class. Importantly, all members of the class received a

materially identical debt-collection letter from Defendants. . . . All members of the class also share common questions of law, in particular, whether that letter was defective under the FDCPA.").

It also makes sense to address the cases collectively in this forum. Because of the statutory cap on damages, "individual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir. 2004) (quoting Fed. R. Civ. P. 23(b)(3)(A)). Moreover, class members are limited to individuals who were New Jersey residents at the time the collection letters were mailed; because this District is unified, adjudicating the claims here would be more efficient. And finally, there is no indication that class members have begun individual litigation or have an interest in controlling this action.

Accordingly, Plaintiff has satisfied his Rule 23(b) burden.

9. *Defendants' opposition repeats its rejected summary judgment arguments*

Defendants' class certification opposition repackages its summary judgment motion, which itself repackaged arguments already rejected by the Third Circuit. The third time is not the charm.

Defendant first argues that "Plaintiff has not satisfied the adequacy and typicality requirements because he lacks the requisite injury-in-fact necessary to establish even his own Article III standing." Class Opp'n at 5. Defendant reiterates a version of this argument throughout its opposition, including in its predominance and superiority arguments. *See Id.* at 10-12.

Specifically, Defendant argues that Plaintiff alleges only a risk of injury from a third party hypothetically scanning the envelope barcode and revealing Plaintiff's IRN. *Id.* at 6. Defendant also argues, for example, that a class action would not be superior because individualized depositions of other class members would be required to determine their risks of harm. *Id.* at 10-

15

10-12. And Defendant again argues that the barcode, which reveals the IRN, does not reveal private information. *Id.* at 6-7. But these arguments directly contradict the Third Circuit, which stated explicitly that "[t]he envelope's barcode disclosed [Plaintiff's] protected information, which caused a concrete injury in fact under the FDCPA." *Morales*, 859 F. App'x at 628. To the extent that the record seems to indicate—and Defendant does not dispute—that the envelopes (and therefore protected information disclosures) were identical among class members, the need for individualized proofs is questionable.

Similarly, as to adequacy, Defendants' only opposition is that there are "*no* identifiable members of the proposed class" because its "barcodes are for mail sorting purposes only, and do not contain a coded 'account number.'" Class Opp'n at 13 (emphasis in original). Defendants rely on the same argument to allege that the Proposed Class fails the numerosity requirement, *i.e.*, that there are insufficient members of the proposed class because there are "*no* identifiable members of the proposed class." *Id.* at 13 (emphasis in original).

None of these arguments are persuasive; they are simply veiled attempts to relitigate the Third Circuit's holding that the barcode revealed private information, thereby causing concrete harm. *Morales*, 859 F. App'x at 628 (rejecting argument that IRN is "meaningless on its face"); *see also Clemens*, 48 F.4th at 155 (quoting *TransUnion*, 141 S. Ct. at 2211 n.7) ("'[A] plaintiff's knowledge that he or she is exposed to a risk of future . . . harm could cause its own current emotional or psychological harm'" and therefore "could be sufficiently analogous to the tort of intentional infliction of emotional distress" to allege concrete harm). Accordingly, the Court will grant Plaintiff's motion for class certification.[7]

---

[7] The Court modifies the class definition to reflect *Morales*' finding that "A smartphone could scan the envelope's barcode to reveal an 'IRN . . . and the first ten characters of [Plaintiff's] street address.'" Specifically, the class will be defined as follows:

III. **CONCLUSION**

For the above reasons, Defendant's summary judgment motion (D.E. 189) will be **DENIED** and Plaintiff's motion for class certification will be **GRANTED**. An appropriate Order accompanies this Opinion.

Dated**:** September 20, 2023

Evelyn Padin, U.S.D.J.

---

All consumers residing in the State of New Jersey, to whom, from December 2, 2014 to December 2, 2015, Defendant sent a collection letter; which letter (a) was seeking to collect a consumer debt on behalf of creditor EMER PHY ASSOC N JERSEY; and (b) was sent in a windowed envelope such that the barcode was visible from outside the envelope which a smartphone could scan to reveal an IRN and the first ten characters of the recipient's street address.

17